United States District Court
Southern District of Texas
**ENTERED**
February 10, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ABELARDO G. GONZALEZ, | § |
| TDCJ #01622682, | § |
| | § |
| Plaintiff, | § |
| VS. | § CIVIL ACTION NO. 3:14-CV-366 |
| | § |
| ANNA D. SARABIA, *et al.*, | § |
| | § |
| Defendants. | § |

## MEMORANDUM OPINION AND ORDER

Plaintiff Abelardo G. Gonzalez (TDCJ #01622682), an inmate in the custody of

the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"),

has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 and is proceeding *in*

*forma pauperis* (Dkt. 1 and Dkt. 8). He asserts that the defendants, officials at TDCJ's

Carole Young Medical Facility ("Young Facility"), denied him access to the courts and

transferred him out of the facility prematurely in retaliation for his attempts to assert his

legal rights. He has filed several amended complaints and memoranda (Dkt. 2, Dkt. 19,

Dkt. 22, and Dkt. 23) and a more definite statement of his allegations (Dkt. 29).

Additionally, Gonzalez has pursued related proceedings, which are discussed in more

detail below, in the Laredo Division, the Corpus Christi Division, and the United States

Court of Appeals for the Fifth Circuit. *See* Southern District of Texas Case Numbers

5:12-CV-193 and 2:15-CV-46 and Fifth Circuit Docket Numbers 14-40460 and 15-

41336.

The Court has considered Gonzalez's factual allegations, taken judicial notice of the related proceedings,[1] and analyzed the applicable law. The Court will dismiss Gonzalez's claims pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim on which relief may be granted.

## I. BACKGROUND

Gonzalez was convicted by a Webb County jury on three counts of aggravated robbery and three counts of engaging in organized criminal activity for his role in three armed robberies that took place in Laredo in late 2007 and early 2008. The particulars of the crimes are outlined in the unpublished opinion of the Fourth Court of Appeals of Texas affirming Gonzalez's convictions. *See Gonzalez v. State*, Nos. 04-10-00123-CR, 04-10-00124-CR, 04-10-00125-CR, 2011 WL 3849393 (Tex. App.—San Antonio Aug. 31, 2011, pet. ref'd). After the jury found him guilty, Gonzalez was sentenced to six concurrent 30-year prison terms and began serving his time in TDCJ's McConnell Unit.

### A. Gonzalez files his federal habeas petition.

While housed in the McConnell Unit, Gonzalez filed a petition for federal habeas relief under 28 U.S.C. § 2254 in the Laredo Division. *See* Southern District of Texas Case Number 5:12-CV-193. Judge Saldana referred the case to Judge Garcia. While the habeas action was pending, Gonzalez began suffering from a medical condition that his

---

[1] *See Gray v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 407 n.7 (5th Cir. 2004) ("We may take judicial notice of another court's judicial action."); *Moore v. Estelle*, 526 F.2d 690, 694 (5th Cir. 1976) ("For a proper understanding of protracted litigation we may draw upon the records in all the preceding cases.") (citation omitted).

pleadings do not identify[2] but which was obviously very serious. Gonzalez was hospitalized at the University of Texas Medical Branch in Galveston ("UTMB") in November of 2013 (Dkt. 29 at p. 2). In February of 2014, he was transferred to the Young Facility, where he remained in medical isolation until September of 2014 (Dkt. 29 at p. 2). According to a motion he filed with the Fifth Circuit, Gonzalez, in addition to being kept in isolation, was subject to "contact precautions" while he was at the Young Facility, apparently because he had contracted a highly contagious vancomycin-resistant bacterial infection. *See* Fifth Circuit Docket Number 14-40460, Motion for Rehearing. These "modified contact precautions," which went beyond the standard medical isolation precautions, were akin to a quarantine. Gonzalez had a private room; medical personnel who entered were required to wear gloves and gowns, and they were required to remove the gloves and gowns before leaving. Immediately after leaving Gonzalez's room, personnel were required to wash their hands with antimicrobial soap or apply an alcohol hand rub. The contact precautions also mandated the immediate cleaning of all patient-care equipment that left Gonzalez's room and imposed strict limits on Gonzalez's movement—he was to be taken out of his room for "essential purposes only."

While Gonzalez was hospitalized, Judge Garcia entered an extensive 30-page Report and Recommendation recommending that Gonzalez's federal habeas petition be denied and dismissed with prejudice. Gonzalez filed two sets of objections to Judge

---

[2] A medical record attached to Gonzalez's original complaint indicates that he was diagnosed with Guillain-Barre Syndrome (Dkt. 2 at p. 19). According to the website of the National Institute of Neurological Disorders and Stroke, Guillain-Barre Syndrome is "a disorder in which the body's immune system attacks part of the peripheral nervous system."

Garcia's report; though one set of objections was untimely, Judge Saldana specifically considered both sets in her opinion accepting Judge Garcia's recommendation. *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entry 47. Notably, Gonzalez blamed "[his] health" for his inability to file the second set of objections on time and did not accuse anyone of denying him access to legal resources. *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entries 45 and 46. Judge Saldana entered a final judgment dismissing Gonzalez's habeas petition with prejudice on March 18, 2014. *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entry 48.

### B. Gonzalez files a notice of appeal regarding the denial of his habeas petition.

Gonzalez filed a notice of appeal. In that notice, he stated that he was placing the notice in the Young Facility mailing system "on Friday April the 18th 2014 A.D." *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entry 50 (emphasis removed). Judge Saldana certified that Gonzalez's appeal was not taken in good faith and denied him permission to proceed *in forma pauperis* on appeal. *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entry 53. The Fifth Circuit then dismissed the appeal for lack of jurisdiction because Gonzalez had filed his notice one day too late:

> [T]he final day for filing a timely notice of appeal was April 17, 2014. [Gonzalez's] pro se notice of appeal is dated April 18, 2014 and stamped as filed on April 28, 2014. Because the notice of appeal is dated April 18, 2014, it could not have been deposited in the prisons [sic] mail system within the prescribed time. The time limitation for filing a notice of appeal in a civil case is jurisdictional. The lack of a timely notice mandates dismissal of the appeal.
> *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entry 55 (citations omitted).

Gonzalez filed a motion with the Fifth Circuit asking the panel to reconsider its dismissal. *See* Fifth Circuit Docket Number 14-40460, Motion for Rehearing. In the motion, Gonzalez claimed for the first time that he was "DENIED access to any law material" while housed at the Young Facility. Gonzalez explained that he was subject to "contact pecautions [sic] imposed on him due to Vancomyci [sic] Resistance Enterrococcus [sic] Syndrome." He further claimed that he had, in fact, filed his notice of appeal on April 17, not April 18—"Petitioner MISQUOTED the date on the motion to appeal of being the 4-18-14 when it was actually the 17th of April. . . . The date in the motion of the 18th was just a typo." Gonzalez included an affidavit in which a fellow inmate swore that he placed Gonzalez's notice of appeal in the prison mailing system on Gonzalez's behalf on April 17, 2014. The Fifth Circuit panel denied Gonzalez's motion. *See* Fifth Circuit Docket Number 14-40460, Order dated August 21, 2014.

### C. Gonzalez files this lawsuit and continues to file post-judgment motions in his habeas action.

Gonzalez then tried to salvage his habeas petition in the district courts. He proceeded on two fronts. The first front was this lawsuit; Gonzalez requested in his original complaint (and continues to request) that his habeas action be reopened because three Young Facility officials and a McConnell Unit official denied him access to the courts during its pendency (Dkt. 1). Judge Hoyt severed the claims against the McConnell Unit official and transferred them to the Corpus Christi Division (Dkt. 9), where they were eventually dismissed as frivolous and for failure to state a claim by

Judge Ramos on the recommendation of Judge Ellington. *See* Southern District of Texas Case Number 2:15-CV-46 at Docket Entries 24 and 40.

The second front was a series of post-judgment motions in Judge Saldana's court. *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entries 56, 67, 69, 71, and 82. In those motions, Gonzalez raised, among numerous other arguments, new objections to Judge Garcia's recommendation; he claimed that he could have brought the objections previously had the Young and McConnell officials not interfered with his ability to conduct legal research. Judge Saldana denied the post-judgment motions. *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entries 61, 76, and 84. Importantly for the purposes of this case, she specifically and thoroughly considered the new objections that Gonzalez raised. *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entry 61. Gonzalez requested permission from the Fifth Circuit to appeal the denial of his post-judgment motions, and the Fifth Circuit denied a certificate of appealability. *See* Fifth Circuit Docket Number 15-41336. Gonzalez has filed a motion asking the Fifth Circuit panel to reconsider its decision. *See* Fifth Circuit Docket Number 15-41336, Motion for Rehearing.

## II.   THE PLRA

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which

6

relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Gonzalez, proceeds *in forma pauperis.* 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Gonzalez proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has clarified that "a complaint must contain sufficient factual matter,

7

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. ACCESS TO COURTS

Under the applicable legal standard, Gonzalez has not stated a viable claim for denial of his right to access the courts.

Prisoners have a Constitutional right to meaningful access to the courts. *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998). However, that right of access "is not unlimited"—it "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). Interference with that opportunity must be intentional to be actionable; negligence on the part of the defendant is not enough to state a claim. *Richardson v. McDonnell*, 841 F.2d 120, 121–22 (5th Cir. 1988); *see also Snyder v. Nolen*, 380 F.3d 279, 291 n.11 (7th Cir. 2004) ("[A]n allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts."); *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995). The plaintiff must also prove an actual injury—i.e., the legal claim or appeal foreclosed by the defendant's intentional conduct must be nonfrivolous and arguable to an extent that constitutes "more than hope." *Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002); *see also Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (holding that a federal prisoner's access-

to-courts claim based on prison officials' failure to deliver a final judgment to him was properly dismissed when the appeal from that judgment "was ultimately frivolous"). Even if there is an actual injury, "delays in receiving legal materials or legal assistance, . . . so long as they are the product of prison regulations reasonably related to legitimate penological interests, . . . are not of constitutional significance[.]" *Lewis v. Casey*, 518 U.S. 343, 361–62 (1996); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

### A. Judge Saldana considered all of Gonzalez's arguments.

Gonzalez primarily complains that he was deprived of the opportunity to present "meaningful" objections to Judge Garcia's report before Judge Saldana accepted it (Dkt. 23 at p. 4; Dkt. 23-1 at pp. 3–5). But he was not deprived of that opportunity—the objections he discusses are the same ones that Judge Saldana specifically addressed in her orders accepting Judge Garcia's recommendation and, later, denying Gonzalez's post-judgment motions. *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entries 47, 61, 76, and 84. It is clear that the actions of the defendants did not prevent Gonzalez from bringing these arguments to Judge Saldana's attention, and it is equally clear from her opinions that Judge Saldana would have patiently and thoroughly considered any other argument that Gonzalez made. Gonzalez has not stated a claim based on these objections.

Gonzalez emphasizes that his list of possible objections is incomplete (Dkt. 23-1 at pp. 3–5). By saying that his list is incomplete, Gonzalez apparently wants the Court to take for granted that he would have found meritorious objections had he had more extensive access to legal materials. The Court could not do that even if it were inclined to; the Supreme Court specifically said in *Harbury* that a prisoner seeking to bring an access-to-courts claim must describe the predicate claim "well enough to apply the nonfrivolous test and to show that the arguable nature of the underlying claim is more than hope." *Harbury*, 536 U.S. at 416 (quotation marks omitted). Gonzalez cannot ground his access-to-courts claim on objections that he cannot specifically describe.

**B. Gonzalez's appeal was frivolous.**

Gonzalez also complains that he was denied the opportunity to file a timely notice of appeal (Dkt. 23 at p. 5). As discussed above, Gonzalez filed a notice of appeal after Judge Saldana dismissed his habeas petition, but the notice was filed one day late. The Court notes that Gonzalez at one point told the Fifth Circuit that he actually filed the notice timely but typed the wrong date on it. If that is true, it would torpedo any argument that the defendants were responsible for the dismissal of the appeal—Gonzalez cannot blame the defendants for his own failure to check the date. Regardless, Gonzalez cannot establish any harm stemming from the missed deadline. Judge Saldana denied Gonzalez permission to proceed *in forma pauperis* on appeal because "any appeal from the decision [to dismiss Gonzalez's federal habeas petition] would not be taken in good faith[.]" *See* Southern District of Texas Case Number 5:12-CV-193 at Docket Entry 53.

In certifying that Gonzalez's appeal was not taken in good faith, Judge Saldana necessarily concluded that the appeal raised only frivolous issues. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). This Court agrees with Judge Saldana's assessment. Gonzalez's appeal would have been frivolous, so his missing the deadline for filing a notice of appeal cannot support a claim for denial of access to the courts. *See Ruiz*, 160 F.3d at 275.

### C. The defendants were acting in accordance with strict medical precautions.

Gonzalez's complaint falls short of establishing the required harm, but it is deficient in another way as well: the Court finds no allegations (other than purely conclusory ones) establishing intentional interference with Gonzalez's opportunity to pursue habeas relief. Gonzalez does allege that the Young Facility defendants acted in direct contravention of a TDCJ policy requiring that prisoners held in medical isolation "be allowed to request and receive up to three items of legal research materials per day, delivered on three alternating days per week, . . . from the unit's law library collection for in-cell use" (Dkt. 23 at p. 9; Dkt. 23-1 at p. 12). However, Gonzalez told the Fifth Circuit that, while in the Young Facility, he was subject to "modified contact precautions" that went *beyond* the standard medical isolation precautions. *See* Fifth Circuit Docket Number 14-40460, Motion for Rehearing. Gonzalez told the Fifth Circuit that he was "denied access to any law material" because of the modified contact precautions, and the I-60 responses that Gonzalez presented to this Court bear that out—one response from Defendant Anna Sarabia informed Gonzalez that, before she could leave legal research

11

materials with him, he would "have to get Medical to remove the Contact Precautions that [were] posted on [his] door" (Dkt. 23-1 at p. 11). The modified contact precautions, which amounted to a quarantine, were indisputably reasonably related to the legitimate penological purpose of preventing the spread of infection. Gonzalez has not stated a viable claim against the defendants, who were merely observing those precautions. *See Casey*, 518 U.S. at 361–62; *see also, e.g., Smith v. Polunsky*, 233 F.3d 575, 2000 WL 1468717, at *2 (5th Cir. 2000) (citing *Casey* and holding that periods of impeded access to legal materials during a post-riot lockdown and a medical trip to the hospital for treatment of an ankle injury were not actionable); *Monroe v. Scott*, 156 F.3d 183, 1998 WL 546532, at *1 (5th Cir. 1998) (citing *Casey* and holding that a prisoner could not complain about denial of access to the law library while in solitary confinement without establishing that the solitary confinement itself was improper).

Gonzalez's allegations do not establish either intentional interference on the part of the defendants or harm as a result of their actions. His claims for denial of access to the courts fail.

## IV.   RETALIATION

Under the applicable legal standard, Gonzalez has not stated a viable claim for retaliation, either.

To state a claim for retaliation, an inmate must establish: (1) that he invoked a specific Constitutional right; (2) that the defendant intended to retaliate against him for his exercise of that right; (3) a particular retaliatory adverse act; and (4) that, but for the

defendant's retaliatory motive, the complained-of adverse act would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The inmate must carry the "significant burden" of showing the defendant's retaliatory motive, which requires more than mere conclusory allegations, and the court must "carefully scrutinize" the claim "with skepticism[.]" *Woods*, 60 F.3d at 1166. The inmate must present direct evidence of motive or, barring that, allege a chronology of events from which retaliation may be plausibly inferred. *Id.* "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson*, 110 F.3d at 310 (quotation marks omitted).

### A. Gonzalez has only presented his personal belief that his transfer was retaliatory.

Gonzalez claims that Defendant Martha Burgess, who was the Young Facility's assistant warden, transferred him out of the Young Facility before he had fully recovered from his health problems in retaliation for his stated intention to sue Young Facility personnel for the alleged access-to-courts violations (Dkt. 23 at pp. 13–15). According to Gonzalez, the catalyzing event was his filing of a grievance in which he requested the names of various McConnell Unit and Young Facility staff members (none of whom was Burgess, presumably because he already knew her name) "for litigation purposes" so that he could file a lawsuit "under the Civil Rights Act 42 U.S.C. § 1983" (Dkt. 23 at p. 14; Dkt. 23-1 at p. 18).

13

Assuming that the transfer out of the Young Facility could be considered retaliatory, and further assuming that Burgess had anything to do with it, Gonzalez's allegations amount to nothing more than his personal belief that Burgess retaliated against him. Judging from his pleadings and their attachments, Gonzalez never named Burgess in a grievance, either directly or by her title; and he never took any other administrative steps to complain about any conduct on her part. There is no sign of animosity between the two of them. Gonzalez does not allege that Burgess ever threatened him or tried in any other way to discourage him when he voiced complaints about his treatment at the Young Facility—on the contrary, when the two talked face-to-face, Burgess asked Gonzalez to submit his access-to-courts complaints in writing and even gave him a printed form with which to do so (Dkt. 23 at p. 13).

There is, in other words, no direct evidence of retaliatory motive, even taking Gonzalez's non-conclusory allegations as true. This distinguishes Gonzalez's case from the *Morris* litigation, on which he heavily relies. *See Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006); *Morris v. Powell*, No. 5:99-CV-263, 2007 WL 1143677 (E.D. Tex. Apr. 16, 2007). In the *Morris* case, a prisoner alleged that he was transferred to a more dangerous unit in retaliation for his use of the prison grievance process. Based on the prisoner's factual allegations, the claim was plausible, though summary judgment was eventually granted against him. The prisoner and the prison official—who managed the unit commissary, where the prisoner worked—had an extremely contentious relationship, and the inmate filed multiple grievances against the official. An internal affairs investigation

14

into the confrontations between the two culminated, according to the prisoner's Section 1983 complaint, in "a disciplinary hearing and termination for [the official.]" *Morris*, 2007 WL 1143677, at *1–2. During the investigation, the internal affairs investigator specifically told the prisoner "that the decision had been made to transfer him because of fears of further retaliation by [the official]." *Id.* The prisoner further alleged that the official had the power to pull strings and ensure that he was transferred to a more dangerous unit; she was a longtime prison employee who "had family members working for the prison system, and at least one family member [who] had achieved a high rank." *Id.* The *Morris* prisoner pled facts that, if true, could have established that the motive behind his transfer was retaliatory. Gonzalez has not.

Nor has Gonzalez presented a timeline from which one can plausibly infer retaliation. Gonzalez claims that retaliation can be inferred from the fact that his transfer followed his request for the officials' names and his statement that he intended to file a Section 1983 lawsuit. This argument is an example of the *post hoc ergo propter hoc* (after this, therefore because of this) fallacy, which the Fifth Circuit long ago disavowed. *See Reese v. Skinner*, 322 Fed. App'x 381, 383 (5th Cir. 2009) ("[T]emporal proximity alone is insufficient to prove but for causation.") (quotation marks omitted); *see also Tampa Times Co. v. N.L.R.B.*, 193 F.2d 582, 583 (5th Cir. 1952) ("Post hoc ergo propter hoc is not sound logic."). In *Reese*, for instance, the prisoner "asserted that the defendants retaliated against him because their harassment of him intensified after he started filing

15

grievances." *Reese*, 322 Fed. App'x at 383. The Fifth Circuit deemed that assertion "an insufficient allegation of causation[.]" *Id.* Gonzalez's allegation is equally conclusory.

Gonzalez has not stated a claim for retaliation.

## V.   CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.   Gonzalez's claims are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim on which relief may be granted.

2.   All pending motions are **DENIED** as moot.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas on _____February 9_____, 2017.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

16